PUERTO RICO LABOR RELATIONS BOARD, ETC., Petitioner, *v.*
THE ESCAMBRÓN BEACH CLUB AND HOTEL CORPORATION,
Respondent.

No. 16.    Argued March 8, 1949.—Decided May 27, 1949.

*Vicente Géigel Polanco, Attorney General (Luis Negrón Fernández,* former *Attorney General* on the brief) and *A. Torres Braschi, Assistant Attorney General, Yamil Galib Frangié, Special Assistant Attorney General* and counsel for the Puerto Rico Labor Relations Board, and *Iram Cancio Vilella* and *Luis G. Estades* also counsel for the Puerto Rico Labor Relations Board, for petitioner.   *R. Rivera Zayas, G. Rivera Cestero,* and *Milton F. Rúa,* for respondent.

JUDGMENT

San Juan, Puerto Rico, May 27, 1949.

For the reasons stated in Part IV of the opinion rendered in *Labor Relations Board* v. *N. Y. & P. R. S. S. Co.,* decided March 31, 1949,[1] the Secretary should issue a writ ordering the defendant Escambrón Beach Club to comply with the arbitration award rendered in this case reinstating the employee Julio Jiménez in his employment as bellboy and to pay him the wages to which he is entitled from the date that it should have reinstated him after the suspension period expired.

It was so ordered and decreed by the Court as witness the signature of the Chief Justice.   Mr. Justice Todd, Jr., dissented.   Mr. Justice Negrón Fernández did not participate herein.

MR. JUSTICE TODD, JR., dissenting.

Once again I am constrained to dissent and not accept as applicable to the findings in this case the doctrine, in my opinion mistaken, laid down in *Labor Relations Board* v. *N. Y. & P. R. S. S. Co.,* 69 P.R.R. 730.

---

[1] 69 P.R.R. 730.

The question submitted to arbitration in this case was, barely stated: "The alleged *unjustified discharge* of the workman Julio Jiménez."

The facts which caused this case to be submitted to arbitration, briefly set forth and as they appear from the award, are as follows:

Julio Jiménez worked as bellboy in the Escambrón Beach Club. On July 10, 1948, a Saturday at midnight, Mr. Manuel Camuñas, Manager of the Club, wanted a large armchair to be carried from a place near the entrance of the Escambrón Beach Club to a throne erected in the main ballroom of said establishment. Since it was a heavy piece of furniture, he sought the services of Víctor Ramírez a bus boy and Julio Jiménez. The former consented but the latter refused and went running out of the Club and hid himself in the ticket booth. Mr. Camuñas came to the door and said to Jiménez: "Do not hide, old boy, because I want you to help me carry a chair." Jiménez came out without saying a word, entered the Club but refused to do the work on the ground that as a bellboy he did not have to perform such work. As a consequence of his refusal Mr. Camuñas immediately discharged him and told him to come to his office on the following Monday in order to give him the money due him.

The evidence presented before the Arbitration Committee proved that the employee Jiménez was guilty of lack of discipline, impudent disobedience to a reasonable order and disrespect. The Committee itself in its decision stated the following:

"In the light of the evidence submitted to the Arbitration Committee at the hearing held on Monday 9, 1948 in the Department of Labor in San Juan, it is unquestionable that Julio Jiménez the bellboy of the Escambrón Beach Club, *hid himself from* Mr. Manuel Camuñas, Manager of the aforesaid business, on July 10, 1948 at a time when the latter asked him to help another fellow worker of Jiménez to carry an armchair from one place to another within the Escambrón Beach Club. This same evi-

dence proves that Julio Jiménez was guilty of *impudent disobedience by refusing to obey a superior order* in the sense that together with another fellow worker he should carry said armchair as the Manager had ordered him to do. There is no question *that this double culpability* requires a punishment in proportion to the magnitude of the fault but taking into consideration the attenuating circumstances that the employee has been working for three years in the same establishment and that he has never before been taken before the Grievance and Adjustment Committee, and that because of his manifest youth he committed *a fault* which he would not have possibly committed if he had been older or been duly trained in an academy and *as his fault did not show moral turpitude, perversity, etc., we do not believe that it warrants, because it is excessive,* a permanent discharge. In our opinion a fair punishment would be suspension from work and salary for two months from July 10 of the current year; provided that upon returning to his work as bellboy, after the two months have elapsed, Julio Jiménez should behave most properly, for if he should commit another fault that would take him before the Grievance and Adjustment Committee and fail to prove his innocence, *then he would automatically become a subsequent offender* at the risk of being permanently suspended as is now sought by the employer, such being the only adequate punishment." (Italics ours.)

This award is rather unique. After admitting that the workman committed "impudent disobedience by refusing to obey a superior order" and that the workman "hid himself" from Mr. Camuñas and that this "double culpability" required punishment, it goes on to say that it all constituted "a fault" and therefore, since it believed that it did not warrant "a permanent discharge because it is excessive" it imposes "a fair punishment", consisting in his suspension from employment and salary for two months.

The question submitted to the Committee was the "unjustified discharge of the workman", not as a punishment but as a right of the employer to discharge an employee for just cause. Upon proving his lack of discipline, disobedience and disrespect which constituted just cause for his discharge, the

Arbitration Committee acted without jurisdiction in imposing a capricious and arbitrary punishment. See the cases cited in my dissenting opinion in *Labor Relations Board* v. *N. Y. & P. R. S. S. Co., supra.* I say this because the inconsistency of the rule established by this Court in the last mentioned case is clear, since in that case due to negligence of the workmen involved therein, which caused considerable losses to the Company, the Committee imposed a one week suspension while in the present case, even in the absence of any loss to the employer, another Committee imposes on the workman a suspension of two months.

Such as the award herein reads, only in cases of "subsequent offense" entailing "moral turpitude, perversity, etc." (I do not know to what extent this "etc." may be used in future awards), on the part of the workman, shall the Committee be willing to uphold a discharge for just cause. The principle established in the *New York & Porto Rico Steamship Co.* case and ratified herein, in my opinion with greater and most serious consequences, have compelled me to voice once more my disagreement therewith.

I say that the consequences are greater and more serious because the case at bar presents a state of facts of great importance. It is being held herein that an employee may be indisciplined, disobey reasonable orders and be disrespectful with his employer, publicly, in a social club during the preparation or celebration of a dance and that none of these facts constitutes a just cause for his dismissal.

In the *New York & Porto Rico Steamship Co.* case this Court accepted that proof of an employee's negligence does not constitute just cause for his discharge if it is so decided by the Arbitration Committee. Now it accepts that where indiscipline, disobedience to reasonable orders and disrespect on the part of an employee are proved, they do not constitute just cause for his discharge either, if it is so decided by an Arbitration Committee. It is therefore being accepted here without saying so, that—as decided by the Committee—there

must be a previous offense or that the action of the employee must show "moral turpitude, perversity, etc." in order to warrant his discharge. We have no, inkling of when or under what very special circumstances an Arbitration Committee shall determine what constitutes just cause for discharge, without the preceding limitations, for we yet have to see a case come to this Court where the workman discharged for just cause has lost his case before an Arbitration Committee.

The effect of these decisions will undoubtedly be a reluctance on the part of the employers to agree in future collective bargaining agreements to submit their cases to arbitration thereby gravely handicapping the relations between employee and employer.

The petition should be dismissed.